### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **ADAM COLLINSON** and **KATHIE COLLINSON**, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>**DEUTSCH IMPORTS, LLC d/b/a GLAZZIO TILES, and CCA GLOBAL PARTNERS, INC. d/b/a PROSOURCE WHOLESALE,**<br><br>   Defendants. | Case No.:  1:23-cv-04870<br><br><br>**JURY TRIAL DEMANDED** |

### <u>COMPLAINT</u>

Plaintiffs Adam Collinson ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendants Deutsch Imports, LLC d/b/a Glazzio Tiles ("Glazzio") and CCA Global Partners, Inc. d/b/a Prosource Wholesale ("Prosource") (together, "Defendants"), and allege the following:

### <u>PARTIES</u>

1. Plaintiffs are each citizens of Illinois. Plaintiffs are married and reside in Illinois.

2. Glazzio is a New York limited liability company with its principal place of business in New York. Glazzio manufactured and distributed the Products.

3. Prosource is a Delaware corporation with its headquarters in Missouri. Prosource sold the Products to Plaintiffs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiffs and Defendants are diverse parties.

5.      The Court has specific jurisdiction over Defendant because the claims of Plaintiffs and Class members arise out of Defendant's actions and omissions that occurred substantially in this state.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this District.

## FACTUAL BACKGROUND

7.      Defendants manufactured, advertised, marketed, distributed, and sold defective glass tiles (the "Products") to Plaintiffs and Class members. The Products fail within days after they are installed with cement-based mortar.

8.      Cement-based mortar is an appropriate installation material for glass tiles installed in the shower and bath areas of bathrooms because of the exposure to water. Because the Products deteriorate and fail when installed with cement-based mortar, the Products are incompatible for use in shower and bath areas. Defendants do not disclose this significant limitation to consumers.

9.      On November 30, 2021, Plaintiffs ordered 160 square feet of a style of the Products called VIC 1912 Wilde Haze, part of the Victorian Icon Collection, at a cost of $3,814.52 from Prosource's location in Naperville, Illinois. Plaintiffs were falsely informed by Prosource's agents and employees that the Products were made in Italy, when they were actually made in China. At

no time were Plaintiffs informed of any limitations on ordinary uses for the Products, that the manufacturer of the Products considered the Products to be made with a "delicate" backing, which deteriorates when installed with cement-based mortar, or that the Products were not compatible with cement-based mortar for shower installations.

10.     Plaintiffs hired Winchell Woodworking and Remodeling ("Winchell"), a tile installation expert, and Plaintiffs had the Products installed in their bathroom during a bathroom renovation in the Summer 2022.

11.     Winchell installed the Products in late June 2022, using installation materials from Custom Building Products ("Custom"). Winchell used FlexBond Premium Crack Prevention Thin-set Mortar for the installation of the Products in the shower due to their exposure to water. The reason this mortar is appropriate for use in this context is to prevent cracking that occurs when other methods of installation are used in wet environments.

12.     Within days of completion of the installation, Plaintiffs noticed that the tiles installed using the mortar began to display discoloration, due to separation of the decorative backing visible through the glass tile, and the backing itself was deteriorating. Plaintiffs notified Defendants immediately after discovering the issue on July 6, 2022. Glazzio incorrectly cast blame on the installation, denied that the Products were defective, and refused to cover the costs of replacement.

13.     On August 12, 2022, Gary Biancalana ("Biancalana"), a certified hard surface flooring inspector, conducted an inspection of the installation. *See* Inspection Report, attached hereto as Exhibit A. Representatives from Glazzio, Prosource, and Custom were present during the inspection.

14.     According to Biancalana's inspection report completed on September 2, 2022, the Products had an "unusual discoloration" that "affected 35%-40% of the installation." *See* Exhibit A. Biancalana concluded that the "concerns with the flooring are due to manufacturing related issues." *Id*.

15.     According to the inspection report, there was nothing to indicate the use of the installation materials affected the coating on the back of the tiles. *See* Exhibit A.

16.     According to the inspection report, the overall "tile installation is rated as excellent," and "there was nothing to indicate installation error." *See* Exhibit A.

17.     On July 13, 2022, Mike Micalizzi ("Micalizzi")—a representative of Custom—stated that "[a]s the coating is deemed 'delicate' by the manufacturer or in other words less robust than typical coating on glass tile, warnings and/or clear instructions on how to effectively install the coated tiles should have been available." *See* Letter from Micalizzi, attached hereto as Exhibit B.

18.     In addition, Micalizzi stated that "the blemishes you've experienced with the installation of the VIC 1912 Wile Haze Tile are most likely due to the deficiency of the backing when placed in an environment of moisture and alkalinity." *See* Exhibit B.

19.     The technical datasheet for the FlexBond Premium Crack Prevention Thin-set Mortar includes "impervious glass and porcelain tile" as a suitable tile type to be used with this mortar. *See* Technical Datasheet, attached hereto as Exhibit C. This supports the fact that this mortar was appropriate to use to install the Products.

20.     On October 26, 2022, Custom prepared a technical service report. Exhibit D.

21.     Custom performed a tensile pull off test to evaluate the bond strength of the assembly tile, mortar, and Custom's waterproofing wall application called RedGard. Custom also

performed an alkalinity test to simulate the Products' exposure to wet mortar and RedGard to determine suitability of the backing of the tiles. *See* Exhibit D.

22.     In this test, 10 out of 10 samples experienced the Product defect where the backing separated completely from the tile. Custom concluded that the testing showed that the backing does not appear to be affected by the RedGard. Rather, the backing appears to be affected and breaks down from exposure to high alkalinity. *See* Exhibit D.

23.     Plaintiffs submitted the inspection report and a bill of costs to Prosource. Prosource initially stated to Plaintiffs that it would resolve this issue and compensate Plaintiffs for the damage. Prosource sent the inspection report and Plaintiffs' bill of costs to Glazzio, requesting that Glazzio provide reimbursement to cover the damages and pay the costs to redo the bathroom using alternative tile products. Glazzio disputed Plaintiffs' claim and attempted to deflect blame on third parties, such as Winchell or Custom. Prosource has also refused to compensate Plaintiffs, despite prior assurances that it would do so.

24.     As a result of the defective Products, Plaintiffs need to replace all of the tile in their bathroom, which will require significant renovations, including substantial costs in materials and labor. Plaintiffs also suffered losses as a result of the initial delivery and installation costs that were wasted, including shipping costs to receive the Products.

## CLASS ALLEGATIONS

25.     Plaintiffs seek to certify the following class ("Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who purchased the Products and installed the Products in an area exposed to water, such as a bathroom or shower.

26.     Excluded from the Class are Defendants' officers and directors, any entity in which Defendants have a controlling interest and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Defendants. Also excluded are the judicial officers presiding over this case and members of their staff.

27.     Plaintiffs reserve the right to amend or modify the Class definition and/or create additional subclasses as this case progresses.

28.     **Numerosity**. Plaintiffs allege on information and belief that the members of the Class are so numerous as to make joinder impractical. Defendants advertise, market, and sell the Products nationwide, and Defendants engage in substantial volumes of sales of the Products.

29.     **Commonality**. There are questions of law or fact common to the Class members, which predominate over any questions affecting only individual members, including but not limited to:

- Whether the Products are defective;

- Whether Defendants adequately disclosed the Products' defects;

- Whether Defendants breached the implied warranty of merchantability;

- Whether Defendants violated the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq*.;

- Whether Defendants were negligent;

- Whether Defendants adequately identified the significant limitations that the Products could not be installed in bathrooms, showers, or other areas exposed to water; and

- Whether the Products' defects caused damage to Plaintiffs and Class members, and the measure of such damages.

30.     **Typicality**. Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform

wrongful conduct.

31.     **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' counsel is competent and experienced in litigating class actions.

32.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

<u>**COUNT I**</u>
**Breach of Implied Warranty of Merchantability**

33.     Plaintiffs reallege paragraphs 1–32 as if fully set forth herein.

34.     Defendants are merchants engaged in the sale of goods to Plaintiffs and Class members.

35.     Defendants sold goods (*i.e.*, the Products) to Plaintiffs and Class members.

36.     As the manufacturer, supplier, marketer, distributor, and seller of the Products, Defendants impliedly warranted to Plaintiffs and Class members that the Products were fit for their ordinary purposes in accordance with the implied warranty of merchantability.

37.     Contrary to the implied warranty of merchantability, the Products were defective and were not fit for their ordinary purposes: specifically, installation in bathrooms, showers, or other areas exposed to water.

38.     Defendants failed to disclaim or disclose the significant limitations that the Products were not compatible with installations in wet locations because the mortar that is necessary to install tile in such environments causes the Products' backing to deteriorate, and display discoloration.

39.     Plaintiffs notified Defendants of their breach of implied warranty prior to filing suit. Defendants failed and refused to provide adequate recourse.

40.     Plaintiffs and Class members used the Products in ordinary and intended ways. The defects that arise in the Products are not due to installation error, use of improper installation materials, unexpected or improper uses of the Products, or other conduct by third parties or Plaintiffs and the Class members.

41.     Plaintiffs and Class members suffered damages and were deprived of the bargained for benefit of Products that were supposed to be compatible with bathroom and shower installation or installation other wet areas. The Products are rendered worthless as a result of the discoloration, unsightly appearance, deterioration, and also impose additional costs and damages on Plaintiffs and Class members who are required to remove the tiles shortly after installation and replace them and other materials.

**<u>COUNT II</u>**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1, *et seq*. ("ICFA")**

42.     Plaintiffs repeat paragraphs 1–32 as if fully set forth herein.

43. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

44. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

45. Defendants are "persons," as defined by 815 ILCS 505/1(c).

46. Plaintiffs are "persons," as defined by 815 ILCS 505/1(c).

47. Defendants' conduct described herein constituted unlawful and unfair business practices. Defendants sold defective Products without providing adequate warnings and disclaimers. Defendants omitted material facts regarding the incompatibility of the Products for use with cement-based mortar necessary for installation in bathrooms, showers, and other wet areas. If Defendants considered the Products to be made with a "delicate" backing such that industry-standard applications would cause the Products to deteriorate rapidly and display discoloration, Defendants should have provided prominent warnings to consumers and installation experts before significant expenses were incurred to purchase and install the Products.

48. Defendants knew or should have known that the omissions were material.

49. Defendants' omissions of material facts regarding the Products were likely to mislead, and did in fact mislead, Plaintiffs and Class members, who were acting reasonably under the circumstances.

50. Plaintiffs and Class members relied on and were injured by Defendants' violations of the ICFA. The Products are rendered worthless as a result of the discoloration, unsightly

appearance, deterioration, and also impose additional costs and damages on Plaintiffs and Class members who are required to remove the tiles shortly after installation and replace them and other materials.

## COUNT III
### Negligence

51. Plaintiffs repeat paragraphs 1-32 as if fully set forth herein.

52. Defendants caused the Products to be manufactured, advertised, marketed, and sold to consumers throughout the United States, including to Plaintiffs and Class members.

53. At all times relevant to the litigation, Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in designing, marketing, manufacturing, supplying, packaging, and selling the Products.

54. Defendants owed a duty to Plaintiffs and Class members to ensure that the Products meet consumer expectations and anticipated ordinary uses for the Products, such as installation in bathrooms, showers, and other areas exposed to water.

55. Defendants owed a duty to Plaintiffs and Class members to ensure that material limitations on the Products, such as incompatibility with cement-based mortar used in wet environment installations, are prominent and effectively communicated to Plaintiffs and Class members.

56. Plaintiffs and Class members are reasonable consumers who reasonably expected that the Products would be appropriate for installation in bathrooms, showers, and other wet areas, as virtually all other glass tile products are.

57. At all relevant times, Defendants knew or in the exercise of reasonable care should have known that Plaintiffs and Class members would use the Products for ordinary purposes that would cause the Products to manifest the defect, display discoloration, and deteriorate.

58.  Defendants' negligence included:

- Failing to use reasonable design practices and using materials as decorative coating that reacted to cement-based mortar in a way that caused the Products to exhibit discoloration and deteriorate in short period of time;

- Failing to use reasonable manufacturing practices to make the Products; and

- Failing to adequately warn Plaintiffs and Class members that the Products were not compatible with cement-based mortars, which Defendants should have expected would be used by Plaintiffs and Class members for installation in their bathrooms, showers, or other wet areas.

59.  As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members suffered injuries. The Products are rendered worthless as a result of the discoloration, unsightly appearance, deterioration, and also impose additional costs and damages on Plaintiffs and Class members who are required to remove the tiles shortly after installation and replace them and other materials.

## PRAYER FOR RELIEF

Plaintiffs request an Order as follows:

A.  Certifying the Class, appointing Plaintiffs as Class Representatives and Plaintiff's counsel as Class Counsel;

B.  Entering judgment in favor of Plaintiffs and Class members and against Defendants on all Counts, jointly and severally;

C.  Awarding Plaintiffs all actual and punitive damages as allowed by law;

D.  Awarding attorneys' fees and costs;

E.  Awarding pre-judgment and post-judgment interest;

F.      Granting all such further and other relief as the Court deems just and

appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all counts so triable.


Plaintiffs ADAM COLLINSON and KATHIE
COLLINSON, individually and on behalf of all others
similarly situated,


By:  s/ Thomas A. Zimmerman, Jr.
       Thomas A. Zimmerman, Jr. (IL #6231944)
       *tom@attorneyzim.com*
       Sharon A. Harris
       *sharon@attorneyzim.com*
       Matthew C. De Re
       *matt@attorneyzim.com*
       Jeffrey D. Blake
       *jeff@attorneyzim.com*
       **ZIMMERMAN LAW OFFICES, P.C**.
       77 W. Washington Street, Suite 1220
       Chicago, Illinois 60602
       (312) 440-0020 telephone
       (312) 440-4180 facsimile
       www.attorneyzim.com

Counsel for Plaintiffs and the putative Class

# Exhibit A



# Inspection Report

Control Number / Invoice Number:  1347-22929

Report Date:  09/02/22

| Commissioning Party |
|---|
| Fred Musselman<br>ProSource Wholesale Of Naperville<br>2012 Corporate Lane<br>Naperville, Illinois<br>60563 |

| End User |
|---|
| Adam Collinson<br>163 Pine Hill Court<br>North Aurora, Illinois<br>60542 |

| Inspection Information | |
|---|---|
| Inspection Date: | 08/12/22 |
| Installation Date: | 06/30/22 |
| Type of Floor: | 9" x 18" Glass wall tile (VCT9X18 Victorian Icon Wilde Haze) |
| Square Feet: | 150 (approximate) |
| Location: | Bathroom and master bath shower |
| Subsurface: | DensShield |
| Issue Requiring Inspection: | Separating, ghosting, and bubbles and clouds in finish |

## I. Claim History:

This Glazzio wall tile was installed on June 30, 2022.  The product under inspection is a 9" x 18" Glass wall tile. The installation took place in the bathroom and master bath shower of the Collinson residence, which is located in North Aurora, Illinois.  Mr. and Mrs. Collinson, the tile installer, and the sales representatives were all present during this inspection.

## II. Inspection and Evaluation:

During the preliminary conversation, this inspector learned the following:

- As of the date of the installation, this house was of existing construction.
- After delivery, the glass wall tiles were stored in the climate controlled home.
- The job site was under climate control before, during, and after the installation.
- The complaint with this floor was described as backing delaminated.
- The concerns were first noticed seven to ten days after the installation.

Initial inspection by this certified inspector found the glass wall tiles have blue painters tape to show some of the concerns.  Closer examination revealed the glass wall tiles backing, has imperfections. These backing imperfections in the glass tile can be best seen at different viewing angles and lighting. This pointed out concern affects individual tiles, located mostly around the shower. This concern affects 35% to 40% of the installation.

Further investigation revealed no concerns were observed with the mortar or tiles' bonding to the backing materials.  The tiles are very well secured to the backer board and were properly installed.

Additional observation discovered there was nothing to indicate the use of the DensShield, coupled with the RedGuard, affected the coating on the back of the tiles. There was a white coating sprayed on the back of the tiles.  DensShield was used for the backer board.  RedGuard was applied, then Flex Bond Custom was applied over the RedGuard, and the tiles were "back buttered".

Tiles that have been removed were inspected thoroughly This established that the glass tiles' backing has been removed and exhibits visible imperfections in the quality.

Product left over from the installation was available for inspection. This material shows no concerns with the backing of material. The left over product had been stored in a climate controlled area since the installation.

Overall, the tile installation is rated as excellent.

The exterior property shows the home has gutters, with proper grading, and drainage.

This house is occupied by two adults and one dog. The flooring was installed by the glue down method over DensShield. The building has an unfinished basement. The house is heated with a forced air furnace, and cooled via central air conditioning. It is unknown whether there is dehumidification (other than the air conditioning) or humidification. As of the date of this inspection, the glass wall tile had not yet been maintained.

## III. Field Test Results:

| Environmental | Testing |
|---|---|
| **Type of Test** | **Result of Test** |
| Air Temperature | 75°F |
| Relative Humidity | 56% |

## V. Conclusion:

This certified flooring inspector finds the following:

This glass tile has an unusual discoloration on random tiles. The discoloration can only be seen when viewing them from certain directions. This concern affects 35% to 40% of the installation.

The affected tiles are only in the area where the RedGuard was used. All tiles are well bonded to the backer board. One tile, around the valve that had cracked, was removed. It was possible to see the back coating of the tile separated from the tile. The coating is very brittle and crumbled to the touch.

There was nothing to indicate an installation error.

The concerns with the flooring are due to manufacturing related issues. The tile manufacturer's tolerances and warranties will prevail.

Please refer to the attached job site photographs for your review.

**End of Inspection Report**

*This flooring inspection was conducted by Gary Biancalana, Certified Hard Surface Flooring Inspector.*

*Flooring inspectors who perform inspections and tests are independent contractors and are not agents or employees of All Flooring Inspections. Independent contractors are responsible for their own actions and All Flooring Inspections shall not be responsible for their acts, errors, or omissions of any such independent contractors.*

*All Flooring Inspections prepared this report in reliance upon the facts, tests and findings supplied to it by the above-named flooring inspector. This report is based on information available to the inspector at the time of the inspection, as well as its review and finalization, as prepared by the All Flooring Inspections review team. The observations and conclusion are made to a reasonable degree of certainty. All Flooring Inspections reserves the right to add to and/or modify these findings should additional information become available.*

*Any and all liability for this inspector and/or All Flooring Inspections, shall be limited to the cost of this inspection and report.*

*Any dispute regarding this report must be resolved by contacting the independent flooring inspector named above at gbianc4@gmail.com. Thank you.*

*Copyright AF Inspect, LLC 2022*

# Exhibit B



July 13, 2022

Mr. David Winchell
dwinchell1@hotmail.com

RE: Glass Tile Discoloration

Dear Mr. Winchell

In answer to your inquiry, the blemishes you've experienced with the installation of the VIC1912 Wilde Haze Tile are most likely due to the deficiency of the backing when placed in an environment of moisture and alkalinity. We have seen this effect with other glass backing but it is not a common occurrence. The backing may also not be well adhered so when the mortar cures and naturally increases its bond, the coating loosened.

Regarding the use of RedGard® Crack Prevention and Waterproofing Membrane for this application, RedGard meets or exceeds performance for every Tile Council of America's Installation detail with ceramic, glass, natural stone and gauged porcelain tile panels; anywhere where an ANSI A118.10 or ANSI A118.12 membrane is specified. RedGard has been used behind millions of glass tiles successfully. Regarding glass mat tile backerboards, please see our July 2021 technical datasheet on our website (link above) as its listed as a suitable substrate. RedGard is commonly used successfully over DensShield. Liquid membranes such as RedGard are at times not recommended with transparent glass tiles as mortar and the membrane's color may show but we have not at any time seen our membrane "erode" tile backings. To the contrary, we have seen backings with water-soluble or non-alkali-resistant compositions degrade.

As the coating is deemed "delicate" by the manufacturer or in other words less robust than typical coatings on glass tile, warnings and/or clear instructions on how to effectively install the coated tiles should have been available.

Custom Building Products would gladly evaluate the eroded backing and tile along with some unused samples if available. If you have additional questions or require further documentation, please contact me at your convenience.

Respectfully,

Mike Micalizzi, CTC
Sr. Director, Technical Services
TCNA Technical Committee
ANSI Technical Committee
MMSA Technical Committee
ASTM Technical Committee
NTCA Technical Committee
NSI Technical Committee
mmicalizzi@cbpmail.net
(562) 631-2776)

Custom Building Products ● 10400 Pioneer Blvd. Suite #3 ● Santa Fe Springs, CA 90670

# Exhibit C

**FlexBond® Premium Crack Prevention Thin-set Mortar / TDS-115**

# FlexBond® Premium Crack Prevention Thin-set Mortar

## 1 Product Name

FlexBond® Premium Crack Prevention Thin-set Mortar

## 2 Manufacturer

Custom Building Products
Technical Services
10400 Pioneer Boulevard, Unit 3
Santa Fe Springs, CA 90670
Customer Support: 800-272-8786
Technical Services: 800-282-8786
Fax: 800- 200-7765
Email: contactus@cbpmail.net
custombuildingproducts.com

## 3 Product Description

A premium quality, polymer-modified mortar with exceptional flexibility and bond strength for tiling difficult surfaces, such as plywood, vinyl and laminates, and for hard-to-bond, nonporous tile, such as porcelain and glass.

### Key Features

- High flexibility to prevent cracks in tile
- Excellent bond strengths
- Outstanding bond to glass and other decorative tile

### Suitable Tile Types

- Vitreous, semi-vitreous and absorptive tile: ceramic, mosaic, quarry, cement body tile
- Impervious glass and porcelain tile
- Natural stone
- Cement-based precast terrazzo
- Brick
- Thin brick

### Suitable Substrates

- Concrete, mortar beds, masonry, Portland cement plaster
- WonderBoard® Lite cement backerboard
- Liquid applied waterproofing membranes such as RedGard® and Custom® 9240
- Crack prevention sheet membranes such as Crack Buster® Pro
- Uncoupling membranes such as RedGard® Uncoupling Mat
- Surfaces treated with MBP Multi-Surface Bonding Primer
- Exterior Grade Plywood (interior residential and light commercial dry areas)
- Gypsum wallboard (interior dry areas)
- Existing ceramic tile (scarified)
- Fully-bonded sheet vinyl flooring (scarified)
- Plastic laminates (scarified)
- Cutback adhesive (see preparation instructions)

### Composition of Product

FlexBond® Crack Prevention Mortar is a dry, proprietary blend of Portland cement, copolymers, inorganic aggregates and chemicals



### Benefits of Product in the Installation

- Outstanding flexibility and bond strength for difficult substrate and tile applications
- Protects against cracking caused by minor in-plane surface movement
- Isolates small cracks and can be applied over small cracks without additional preparation
- Exceeds ANSI A118.4, A118.15 and A118.11 standards without the need for additives
- Approved for industry-recommended interior and exterior applications
- Recommended for interior and exterior pools and water features which require ANSI A118.15 bonding mortars.

### Limitations to the Product

- Do not bond directly to hardwood, Luan plywood, particle board, parquet, cushion or sponge-back vinyl flooring, fiberglass, plastic or OSB panels.
- When setting moisture sensitive natural stone, cement or agglomerate tile use EBM-Lite™ Epoxy Bonding Mortar 100% Solids or CEG-Lite™ 100% Solids Commercial Epoxy Grout.
- Do not use to install resin-backed stone; use EBM-Lite™ Epoxy Bonding Mortar 100% Solids, CEG-Lite™ 100% Solids Commercial Epoxy Grout or contact Custom's® Technical Services for recommendations.
- For clear or translucent glass, CUSTOM recommends Glass Tile Premium Thin-Set Mortar. When setting glass tile larger than 6" x 6" (15 x 15 cm), contact Custom's® Technical Services for recommendations.
- When setting dimensional stone larger than 12" x 12" (30 x 30 cm), contact Custom's® Technical Services for recommendations regarding subfloor deflection requirements.
- Contact CUSTOM Technical Services when installing metal tiles

### Packaging

- 50 lb (22.68 kg) and 25 lb (11.34 kg) bags
- Gray or white



# FlexBond® Premium Crack Prevention Thin-set Mortar

**4    Technical Data**

**Applicable Standards**

American National Standards Institute (ANSI) — ANSI A108.5, A118.4, A118.15 and A118.11 of the American National Standards for the Installation of Ceramic Tile ASTM International (ASTM)

- ASTM C109 Standard Test Method for Compressive Strength of Hydraulic Cement Mortars (Using 2-in or [50-mm] Cube Specimens)
- ASTM C627 Standard Test Method for Evaluating Ceramic Floor Tile Installation Systems Using the Robinson-Type Floor Tester

Resilient Floor Covering Institute - (RFCI) Recommended Work Practices for Removal of Resilient Floor Coverings
Tile Council of North America (TCNA) - TCNA Handbook for Ceramic Tile Installation, TCNA Method EJ171
ISO 13007-2

**Technical Chart**

| Property | Test Method | Requirement | Typical Results |
|----------|-------------|-------------|-----------------|
| Pot Life | | | 4 Hours |
| Open Time (E) | A118.15 Section 5.3 | E = 30 Minutes | Pass |
| 4 Week Shear Bond Strength | | | |
| Glazed Wall Tile | A118.15 Section 7.1.2 | > 450 psi | 600 - 700 psi (42.2 - 49.2 kg/cm²) |
| Porcelain Tile | A118.15 Section 7.2.5 | > 400 psi | 400 - 500 psi (28.1 - 35.2 kg/cm²) |
| Quarry Tile to Plywood | A118.11 Section 4.1.2 | > 150 psi | 300 - 350 psi (21.1 - 24.6 kg/cm²) |

**Environmental Consideration**

Custom® Building Products is committed to environmental responsibility in both products produced and in manufacturing practices. Use of this product can contribute towards LEED® v3 certification:

- Up to 2 points towards MR Credit 5, Regional Materials
- Up to 2 points towards MR Credit 4, Recycled Content
- Up to 1 point towards IEQ Credit 4.1, Low-Emitting Materials – Adhesives & Sealants

**5    Instructions**

**General Surface Prep**

**USE CHEMICAL-RESISTANT GLOVES, such as nitrile, when handling product.**

Surfaces must be structurally sound. Remove all grease, oil, dirt, curing compounds, sealers, adhesives or any other contaminant that would prevent a good bond. Glossy or painted surfaces must be sanded, or abraded, and stripped of all contaminants. Concrete must be cured 28 days and accept water penetration. Concrete must be free of efflorescence and not subject to hydrostatic pressure. Concrete slabs should have a coarse finish to enhance the bond. Plywood flooring including those under resilient flooring must be structurally sound and meet all ANSI and deflection requirements. For questions about proper subfloor installation, call Technical Services. Smooth concrete surfaces, existing glazed tile, terrazzo, or polished stone should be scarified. Sheet vinyl must be well bonded and stripped of old finish. Roughen the surface by sanding or abrading, then rinse and allow to dry. Expansion joints should never be bridged with setting material. Do not sand flooring materials containing asbestos. Ambient temperature should be maintained above 50° F (10° C) or below 100° F (38° C) for 72 hours to achieve proper bond.

**Bonding to Concrete Surfaces**

Concrete or plaster must be fully cured and must accept water penetration. Test by sprinkling water on various areas of the substrate. If water penetrates, then a good bond can be achieved; if water beads, surface contaminants are present, and loss of adhesion may occur. Contaminants should be mechanically removed before installation. Concrete must be free of efflorescence and not subject to hydrostatic pressure. Concrete slabs should have a coarse finish to enhance the bond. Smooth concrete slabs must be mechanically abraded to achieve proper bond.

**Bonding to Lightweight Cement and Gypsum Surfaces**

Lightweight or gypsum based underlayments must obtain a minimum 2000 psi (13.8 MP) compressive strength. The underlayment must be sufficiently dry and properly cured to the manufacturer's specifications for permanent, non-moisture permeable coverings. Surfaces to be tiled must be structurally sound and subject to deflection not to exceed the current ANSI Standards. Surfaces shall be free of all grease, oil, dirt, dust, curing compounds, waxes, sealers, efflorescence, or any other foreign matter.

All Lightweight cement or Gypsum surfaces should be primed with a properly applied sealer or a primer coat of RedGard, consisting of 1 part RedGard diluted with 4 parts clean, cool water. Mix in a clean bucket at low speed to obtain a lump free solution. The primer can be brushed, rolled or sprayed to achieve an even coat. Apply the primer coat to the floor at a rate of 300 sq. ft.l (7.5 sq. m/L). Drying time depends on site conditions, but is normally less than 1 hour. Extremely porous surfaces may require 2 coats. At this point, RedGard can be applied to the primed lightweight or gypsum based surface. Refer to the individual product data sheet or packaging directions for application instructions. Expansion joints must be installed in accordance with local building codes and ANSI/TCNA guidelines. Refer to TCNA EJ171.



# FlexBond® Premium Crack Prevention Thin-set Mortar

**Bonding to Plywood Surfaces**

Plywood floors, including those under resilient flooring, must be structurally sound and must meet all ANSI A108.01 Part 3.4 requirements. Maximum allowable deflection: L/360 tile L/720 stone. See TCNA F150-13 Tile Installations, TCNA F141-13 and F250-13 for Stone. For questions about proper subfloor installation requirements, call Custom technical services.

**Bonding to Backerboards**

As an alternative to an additional layer of plywood, WonderBoard backerboard may be installed over plywood subfloors for ceramic tile installations. Refer to TCNA F144-13 tile installations, TCNA F250-13 stone installations. Call Custom technical services when installing natural stone over plywood subfloor.

**Bonding to Existing Surfacing Material**

Existing Ceramic Tile, Resilient Flooring or Plastic Laminates: Resilient flooring or plastic laminates must be well bonded, as well as clean and free of all contaminates. Roughen the surface by sanding or scarifying; rinse and allow to dry. Do not sand flooring that contains asbestos. For existing well bonded ceramic tile, mechanically abrade the surface. Rinse and allow to dry. When sanding, an approved respirator should be used.

**Bonding to Cutback Adhesive**

Adhesive layers must be removed, as they reduce mortar bond strength to cement surfaces. Use extreme caution; adhesives may contain asbestos fibers. Do not sand or grind adhesive residue, as harmful dust may result. Never use adhesive removers or solvents, as they soften the adhesive and may cause it to penetrate into the concrete. Adhesive residue must be wet scraped to the finished surface of the concrete, leaving only the transparent staining from the glue. To determine desirable results, do a test bond area before starting. Refer to the RFCI Pamphlet, "Recommended Work Practices for Removal of Resilient Floor Coverings" for further information.

**Movement Joint Placement**

Movement joints are required for perimeters and other changes of plane in all installations. Expansion joints and cold joints, as described in ANSI A108.01, should never be bridged with setting material. They must be brought through the tile work and filled with an appropriate elastomeric sealant, such as Custom's 100% Silicone. Contact Custom's Technical Services for the proper treatment of control or saw cut joints. Refer to TCNA EJ171, F125 & F125A.

**Mixing Ratios**

Mix 5 qts (4.73 L) clean water per 50 lb (22.68 kg) bag of mortar.

**Mixing Procedures**

Mix by hand or use a low 150 – 200 rpm speed 1/2" (13 mm) drill to achieve a smooth, paste-like consistency. Let the mixture slake or stand 5 – 10 minutes; stir again and use. Stir occasionally, but do not add more water. When properly mixed, troweled ridges will stand without slump.

**Application of Product**

Installation must conform to ANSI A108.5. Use a properly-sized notch trowel to ensure proper coverage under tiles. Using the flat side of the trowel, apply a skim coat of mortar to the surface. With the notch side of the trowel held at a 45° angle, apply additional mortar to the surface, combing in one direction. Press the tile firmly into place in a perpendicular motion across ridges, moving back and forth. The perpendicular motion flattens ridges and closes valleys, allowing maximum coverage. With some tile, back-buttering is advisable. Adjust the tile promptly and beat it in with a beating block and rubber mallet. Mortar can be applied up to 1/4" (6 mm) thick after beat in. For thicker applications, use a medium bed mortar; periodically pull up a tile and check the back to ensure proper adhesive coverage. If the material has skinned over (not sticky to the touch), recomb with the notch trowel; if too dry, remove and replace the dry material with fresh material.

**Curing of Product**

Curing time is affected by ambient and surface temperatures and humidity. Use the following as a guideline. Allow 24 hours before grouting and light traffic. Allow 7-10 days before heavy or vehicular traffic. Before exposure to heavy or vehicular traffic, assure assembly is rated "Heavy or Extra Heavy" per TCNA Service Requirements. As necessary, use plywood or other load distributing protection when moving heavy equipment across tiled assembly. Submerged applications; wait 14 days after the final grouting period before filing water features with water at 70°F (21°C).

**Cleaning of equipment**

Clean with water before the material dries.

**Storage**

Store in a cool dry area.

**Health Precautions**

This product contains Portland cement and free silica. Avoid eye contact or prolonged contact with skin. Wash thoroughly after handling. If eye contact occurs, flush with water for 15 minutes and consult a physician. Do not breathe dust; wear a NIOSH approved respirator

**Conformance to Building Codes**

Installation must comply with the requirements of all applicable local, state and federal code jurisdictions.

**6 Availability & Cost**

| Location | Item Code | Size | Color | Package |
|----------|-----------|------|-------|---------|
| USA | FBG25 | 25 lb (11.34 kg) | Gray | Bag |
| USA | FBW25 | 25 lb (11.34 kg) | White | Bag |
| USA | FB50 | 50 lb (22.68 kg) | Gray | Bag |
| USA | FBW50 | 50 lb (22.68 kg) | White | Bag |
| Canada | CFB50 | 50 lb (22.68 kg) | Gray | Bag |



# FlexBond® Premium Crack Prevention Thin-set Mortar

**7   Product Warranty**

Obtain the applicable **LIMITED PRODUCT WARRANTY** at www.custombuildingproducts.com/product-warranty or send a written request to Custom Building Products, Inc., Five Concourse Parkway, Atlanta, GA 30328, USA. Manufactured under the authority of Custom Building Products, Inc. © 2017 Quikrete International, Inc.

When FlexBond® Crack Prevention Mortar is used as a part of a qualifying full installation system of CUSTOM products, the installation can qualify for up to a lifetime system warranty. CUSTOM will repair and/or replace, at its discretion, the affected area of the system. For more information, find details and limitations to this warranty at custombuildingproducts.com.

**8   Product Maintenance**

Properly installed product requires no special maintenance.

**9   Technical Services Information**

For technical assistance, contact Custom technical services at 800-282-8786 or visit custombuildingproducts.com.

**10   Filing System**

Additional product information is available from the manufacturer upon request.

---

**Expected Wear**

Properly installed tile will last for more than 60 years.

**Related Products**

Natural Stone & Large Tile Premium Mortar

Fusion Pro® Single Component® Grout

MegaLite® Ultimate Crack Prevention Large Format Tile Mortar



# FlexBond® Premium Crack Prevention Thin-set Mortar

**Coverage**

SQUARE FOOT COVERAGE PER 50 LB BAG (SQUARE METER PER 22.68 KG)

For tile with longest side 15"+, use a medium bed mortar from CUSTOM designed for large format and heavy tile.

| Trowel Size | Min Coverage | Max Coverage |
|---|---|---|
| Longest side of tile less than 8" use 1/4" x 1/4" x 1/4" (6 x 6 x 6 mm) Square-Notch | 85 sq. ft. (7.9 M²) | 95 sq. ft. (8.8 M²) |
| Longest side of tile 8" to 15" use 1/4" x 3/8" x 1/4" (6 x 9.5 x 6 mm) Square-Notch | 60 sq. ft. (5.6 M²) | 67 sq. ft. (6.2 M²) |

Recommended minimum coverage (80% for dry areas and 95% for wet areas and exteriors). Back buttering may be necessary.

Note that mortar coverage does not include backbuttering tiles. When backbuttering, consider the tile underside pattern and depth to estimate thickness and usage to add to your estimate.

Chart for estimating purposes. Coverage may vary based on installation practices and jobsite conditions. For more sizes, use the material calculator at CustomBuildingProducts.com or contact CUSTOM Technical Services at 800-282-8786.



# Exhibit D



**Title: Glazzio Glass Tile 7 Day Tensile Test**
**Date of Report: 10-26-2022**
**Project #: mm221014 GlazzioGlass Tile**
**Author: Kory Jones**

**Technical Service Report**
**For internal Use Only**

-----------------------------------------------------------------------------------------------------------

**SUMMARY:**
Samples received from Terry Keenan regarding glass tile backing discoloration/backing delamination

**INTRODUCTION:**
Tile assembly on the job was installed as follows: Dens-Shield, RedGard, VersaBond Mortar, Glass Tile and Grout. The glass tile is clear with a decorative pattern applied to the back. Discoloration spots began showing through approximately a month after installation. The backing in the spots separated from the glass upon removal of the tile and tile backing appears very dull and flakey with exposure to mortar in comparison to unused tile which has a glossy white surface. When a screwdriver is dragged across the tile backing of the removed tile, it flakes off very easily and separates from what appears to be a secondary layer. The un-installed tile backing is very resistant to scraping and does not scratch or flake off. It appears that there was a "First layer" applied to the back of the glass that has the color/pattern, then the white backing is applied afterward.
It was claimed that the RedGard is creating a chemical rection that is causing a degradation to the white backing, which is, in turn, causing the silver spots.

**OBJECTIVE:**
Determine if any of the CUSTOM® products in this assembly appear to degrade the backing material on the tile.

**MATERIALS & METHODS:**
We performed a tensile pull off test to evaluate the bond strength of the assembly.
The assembly was set up as follows:
- ISO Block covered with RedGard, (25 mils) installed 10-18-2022.
- VBLFT Mortar (applied with ¼"x ¼" square notch trowel). Installed 10-18-2022
- 10- 2"x2" pieces of glass tile placed into the mortar.

The assembly cured for 7 days before pulling tiles.  Tiles pulled on 10-25-2022

An alkalinity soak test was also performed to simulate exposure to wet mortar and RedGard to determine suitability of the backing.

**RESULTS:**

There are 10 tile samples in a Tensile Pull set-up. Every one of these samples separated completely clean from the mortar, leaving no mortar residue on the tile and a completely smooth mortar surface.
All the mortar remained bonded to the Redgard.

Shear numbers are measured in PSI

| Glazzio Glass Tile, 7 Day Tensile Results | | | |
|---|---|---|---|
| | | | |
| | **RG/VBLFT** | | |
| | 97 | | |
| | 129 | | |
| | 132 | | |
| | 137 | | |
| | 143 | | |
| | 148 | | |
| | 155 | | |
| | 170 | | |
| | 171 | | |
| | 178 | | |
| **Average** | **146** | | |
| **STDEV** | 22.9913 | | |

**CONCLUSION:**

Our testing shows that the backing does not appear to be affected by the Redgard. It does however appear to be affected and breaks down from exposure to high alkalinity

**PICTURES:**

Below

Tensile Set-up, numbers after being pulled.



After pull.



Tile backing, after pull

Front of tile

More Below




More below



Jobsite tile, shows flaking and two layers separation

30-day alkali bath (13 ph) peeled away backing




30-day Redgard application, backing not affected.

